James X. Bormes (*pro hac vice* admission pending)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan (*pro hac vice* admission pending)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois  60601
(312) 726-3400
Tom@tomryanlaw.com
Attorney for Plaintiff

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TERRI HAYFORD, individually and on behalf of all others similarly situated, | No.: |
| Plaintiff, | **PLAINTIFF'S COLLECTIVE ACTION COMPLAINT** |
| v. | |
| NATIONSTAR MORTGAGE, LLC, and AEROTEK, INC. | **(JURY TRIAL REQUESTED)** |
| Defendants. | |

Plaintiff, Terri Hayford, individually and on behalf of all other persons similarly situated, known and unknown, through her attorneys, complains against Defendants Nationstar Mortgage, LLC ("Defendant") and Aerotek, Inc. ("Aerotek") (collectively, "Defendants"), as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), for Defendants' failure to pay Plaintiff and other similarly situated persons all overtime pay for all time worked in excess of forty (40) hours per week.

2. Defendants employ the telephone-based workers who are the putative class members in this lawsuit.

3. Defendants knowingly required and/or permitted Plaintiff, who worked as a telephone-dedicated employee in the position of Loan Counselor and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions, and completing customer service calls.

4. In addition, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their break periods, including meal breaks, for which they were not paid. The work that Plaintiff and similarly situated employees performed during break periods includes, but is not limited to, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

5. The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately fifteen minutes per day per person.

6. Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

7. Plaintiff brings her FLSA overtime claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of telephone-dedicated employees who worked for Defendants throughout the country at call centers owned by Nationstar Mortgage, LLC ("Nationstar").

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 29 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. Venue is proper in this Court as the illegal conduct alleged herein occurred in this district.

## THE PARTIES

10. Plaintiff Terri Hayford is an individual who Defendants employed from approximately April 2015 to November 2015 as an hourly, non-exempt Loan Counselor in a call center Nationstar operates located at 2501 South Price Road in Chandler, Arizona. Initially, Aerotek placed Plaintiff to work in the call center as a temporary employee where she labored under the control and supervision of Nationstar. In July of 2015, Plaintiff became a direct employee of Nationstar. Plaintiff Hayford resides in and is domiciled within this judicial district.

11. Nationstar has become one of the largest and fastest growing mortgage servicers in the United States with a servicing portfolio of $453 billion and approximately 2.7 million customers. Nationstar offers servicing, origination, and transaction-based real estate services its customers, including: homeowners, home buyers, home sellers, investors, and other real estate market participants. Nationstar operates the telephone call center on Price Road in Chandler, Arizona and, upon information and belief, elsewhere,

where telephone-dedicated hourly employees handle phone calls regarding residential mortgage service inquiries, among other things. Nationstar directly employs Loan Counselors at its call centers.

12. Nationstar is a for profit Delaware limited liability company qualified to do business in Arizona. Nationstar may be served at 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021, care of Corporation Service Company, Nationstar's registered agent in Arizona.

13. Defendant Aerotek is a for profit Maryland corporation qualified to do business in Arizona. Aerotek may be served at 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021, care of Corporation Service Company, Nationstar's registered agent in Arizona.

14. Aerotek works with companies, including Nationstar, that require large volume work forces. Aerotek has employees and managers who work onsite at these companies, including at Nationstar work sites where Plaintiff and the putative class members worked. Aerotek employees and managers assist and help manage a company's telephone-dedicated staffing needs and manage recruitment, selection, training, planning, retention and management reporting of those phone-based employees.

15. During the class period, Aerotek provided Nationstar with staffing and in-house services related to the human resources processes, from worker recruitment and selection to introduction, planning and management of workers, including of the Plaintiff and similarly situated employees.

16. Defendants employed Plaintiff and other similarly situated persons as "employees," as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

17. At all material times, Defendant have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

4

18. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

19. At all relevant times, Defendants were an "employer" of Plaintiff and other similarly situated persons, as that term is defined by Section 203(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all material times, Plaintiff and FLSA Class Members were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

21. Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

## FACTUAL ALLEGATIONS

### A. *Defendants' Practice of Requiring and/or Permitting Telephone-Based Hourly Employees to Work Before the Start of Their Scheduled Shift Time*

22. Nationstar operates and has operated "call centers" in Arizona and across the nation where telephone-dedicated employees similar to Plaintiff handle phone calls regarding residential mortgage services offered by Nationstar to its customers.

23. Nationstar and Aerotek have an agreement to share the services of Plaintiff and similarly situated telephone-based employees.

24. Nationstar and Aerotek earn revenue and profits from the services of Plaintiff and other similarly situated telephone-dedicated employees.

25. Prior to starting work on the call center floor, Plaintiff and other similarly

situated telephone-based employees were and are interviewed by employees and managers of Nationstar.

26. Nationstar and Aerotek had the power to hire and fire Plaintiff and other persons similarly situated, with Nationstar having ultimate approval as to whether a person works in its call centers.

27. For workers placed at Nationstar's call centers via Aerotek, both Nationstar and Aerotek supervised and controlled the work schedule of Plaintiff and other similarly situated persons.

28. For workers placed at Nationstar's call centers via Aerotek, Nationstar and Aerotek jointly determined the rate of pay for Plaintiff other similarly situated persons.

29. For Plaintiff and certain of the workers placed at Nationstar's call centers via Aerotek, Aerotek issued paychecks unless and until the workers became direct employees of Nationstar, and both Defendants were involved in determining the actual amount of compensation paid by the paycheck.

30. At the Nationstar call center where Plaintiff Hayford worked, Nationstar and Aerotek had managers on the floor of the call center during the workday, managing the work activities of the Plaintiff and other similarly situated persons.

31. Nationstar and Aerotek jointly and collectively monitored, controlled and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

32. Defendants do not allow telephone-based employees to use Nationstar's phones and computers for any personal use. Additionally, Defendants generally prohibit and do not allow telephone-based employees to use their own personal cell phones on the call center floor. Under Defendants' policies and practices, telephone-based employees are required to store their personal cell phones during the work day and can generally only use them on breaks and off the call center floor.

33. At the Nationstar call center where Plaintiff worked, Nationstar and Aerotek's managers on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based employees arrived at their work stations before the start of their scheduled shift time, logged into Nationstar's computers, and began working on their computers prior to the start of their scheduled shift time.

34. Despite seeing and knowing that Plaintiff and similarly situated telephone-based employees performed work at their work stations prior to their scheduled shift time start, Defendants and their managers on the floor of the call center did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

35. Defendants possess, control and/or have access to information and electronic data that shows the times Plaintiff and similarly situated telephone-based employees logged into their computers each day and the time they logged into their telephone systems.

36. By possessing, controlling and/or accessing this information, Defendants knew that Plaintiff and similarly situated telephone-based employees worked prior to the

start of their scheduled shift time.

37. Despite having this information and knowing that Plaintiff and similarly situated telephone-based employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, Defendants did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

38. Defendants knowingly required and/or permitted Plaintiff and those similarly situated to her to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, and completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times.

39. In addition, by having managers on the call center floor and having access to the electronic data, among other things, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their break periods, for which they were not paid. The work that Plaintiff and similarly situated employees performed during break periods includes, but is not limited to, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

40. The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages

approximately fifteen minutes per day per person.

41.     Defendants monitored and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

### B.     *Defendants Knew of and Assented to the Pre-Shift Work*

42.     Defendants' policy and practice permits and/or requires telephone-based employees to be logged into their phones by the employee's scheduled start time.

43.     In order to be logged into Nationstar's telephone systems, Defendants required and/or permitted Plaintiff and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions.

44.     Defendants' policy and practice disciplines telephone-based employees if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

45.     This policy and practice of Defendants results in telephone-based employees, including the Plaintiff, to boot up their computers, initialize several software programs and/or read company emails and instructions prior to their start of their scheduled shift time.

46.     As set forth herein, via their policies and practices and through their own telephone and computer systems, Defendants knew and were aware that the telephone-based employees performed work prior to the start of their scheduled shift.

9

47. Defendants did not instruct Plaintiff and similarly situated telephone-based employees to not log into their computers or telephones, or to not read company emails prior to the start of their scheduled shift time. Rather, Defendants required, permitted and/or allowed Plaintiff and the putative class members to work prior to their scheduled shift time.

48. By knowing of, permitting and/or requiring Plaintiff and similarly situated telephone-based employees to log into their computers, initialize their various software programs and/or read company email and instructions prior to the start of their scheduled shift time, Defendants assented to them performing this work.

**C.** ***Defendants' Failure to Pay Overtime Wages to Their Telephone-Based Hourly Employees***

49. Defendants determined the rate of pay for Plaintiff other similarly situated persons.

50. Plaintiff's rate of pay when working for Defendant Aerotek was $14.00 per hour.

51. When Plaintiff became a direct employee of Defendant Nationstar in approximately July 2015, her rate of pay became approximately $15.38 per hour. Plaintiff's job duties and responsibilities did not change when she became a direct employee of Nationstar. The day after Plaintiff became a direct employee of Nationstar she worked at the same desk using the same computer, telephone and software programs. Furthermore, there were no changes in the way she performed her work, the same

performance metrics applied and her direct supervisor did not change.

52. During nearly every workweek from approximately April 2015 to approximately November 2015, Plaintiff generally was scheduled to and did work at least 40 hours a week based on a schedule of working 5 days per week.

53. Plaintiff typically worked an average of fifteen minutes without pay each day.

54. Because Plaintiff typically worked at least forty hours during each workweek that she was employed by Defendants, all of the time that she was required or permitted to work without pay constitutes unpaid overtime wages.

55. Plaintiff is owed an average of 1.25 hours of unpaid overtime wages for each week that she worked for Defendants.

56. Nationstar's managers reviewed and approved the daily work times of Plaintiff and other similarly situated persons prior to both Defendants approving paychecks before they were issued.

57. Defendants supervised and controlled the work schedule of Plaintiff and other similarly situated persons by setting the work schedules of those persons and requiring them to be at their work stations and ready to handle calls at the start of their scheduled shift time.

58. Both Defendants determined the actual amount of compensation paid to Plaintiff and similarly situated persons.

59.     Plaintiff and those employees similarly situated are individuals who were, or are, employed by Defendants in customer service, sales, and similar positions at Nationstar's call centers who were not paid for some or all of their work activities prior to the beginning of their shifts, during meal and rest breaks, or after the end of their shifts.

60.     When Plaintiff and similarly situated telephone-dedicated employees are at work at Nationstar's call centers, there is no way to tell the difference between direct hires of Nationstar and other telephone-dedicated workers who are placed at the call center through Aerotek.

61.     Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of providing services related to handling phone calls regarding residential mortgage services offered by Nationstar to its customers while working in Nationstar's call centers.  Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

62.     Plaintiff and the other employees are also similar because Defendants did not pay them for all time they actually worked.  Defendants knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls.  Additionally, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their break periods, for which they were not paid.

63. The net effect of Defendants' policies and practices, instituted and approved by company managers, is that Defendants willfully failed to pay regular and overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs. Defendants thus enjoyed ill-gained profits at the expense of their hourly employees.

64. Plaintiff and others similarly situated at times work or worked in excess of forty hours per week for Defendants in a given workweek.

65. Defendants' policy and practice of requiring and/or permitting their employees, including Plaintiff and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206.

66. Defendants' policy and practice of requiring their employees to perform work without pay in many instances has caused and continues to cause Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207.

67. Defendants' failure to compensate their non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

68. Defendants' non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

## COLLECTIVE ACTION ALLEGATIONS

69. Plaintiff brings Count I of this Complaint as a collective action on behalf of herself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay at any time during the three years prior to the commencement of the action to present at call centers owned by Nationstar.

70. Plaintiff has actual knowledge that FLSA Class Members have been denied overtime pay for hours worked over forty hours per workweek. That is, Plaintiff worked with other telephone dedicated employees who worked at the Nationstar call center. As such, she has first-hand personal knowledge that the same pay violations occurred to other class members. Furthermore, other telephone dedicated employees at Nationstar call centers have shared with her similar pay violation experiences as those described in this complaint.

71. Other employees similarly situated to Plaintiff work or have worked at Nationstar call centers, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

72. Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

73. FLSA Class Members perform or have performed the same or similar work as Plaintiff.

74. FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

75. FLSA Class Members are not exempt from receiving overtime pay at the federally mandated wage rate under the FLSA.

76. As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of overtime and wages.

77. Defendants' failure to pay the overtime compensation wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

78. The experiences of Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

79. The specific job titles or precise job responsibilities of each FLSA Class Member do not prevent collective treatment.

80. All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

81. Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts.

Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all FLSA Class Members.

82. As such, Plaintiff brings her FLSA overtime claim as a collective action on behalf of the following class, and Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendants as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis at Nationstar call centers at any time between December 20, 2013 and the present who did not receive the full amount of overtime wages earned and owed to them.

83. There are questions of law or fact common to the employees described in paragraph 82.

84. Plaintiff is similarly situated to the employees described in paragraph 82, as Plaintiff's claims are typical of the claims of those persons.

85. Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 82.

86. This is not a collusive or friendly action. Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect the interests of the persons described in paragraph 82.

87. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

88. At all relevant times, Defendants employed Plaintiff and the persons described in paragraph 82.

89. At all relevant times, Defendants paid Plaintiff and the persons described in paragraph 82 to work.

90. At all relevant times, Defendants have been an "employer" of Plaintiff and the persons described in paragraph 82, as the term "employer" is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

91. At all relevant times, Plaintiff and the persons described in paragraph 82 have been "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

## COUNT I – FLSA
### (Failure to Pay Overtime Wages)

92. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 91 as paragraph 92 of this Count I.

93. Plaintiff, individually and on behalf and the members of the class described in paragraph 82, asserts claims for unpaid overtime pursuant to the FLSA.

94. At any and all times relevant hereto, Defendants were an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

95. At any and all times relevant hereto, Defendants were an "employer" of the Plaintiff and the members of the class described in paragraph 82 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

96. At any and all times relevant hereto, Plaintiff and the members of the class described in paragraph 82 were "employees" of Defendants as defined by Section 3(e) of

the FLSA, 29 U.S.C. § 203(e).

97. Plaintiff and the members of the class described in paragraph 82 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

98. At all times relevant hereto, Defendants' failure to pay Plaintiff and the members of the class described in paragraph 82 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

   a. Defendants knew that the FLSA required them to pay time and one-half for all time worked over 40 hours in a week;

   b. Defendants failed to maintain true and accurate time records; and

   c. Defendants encouraged Plaintiff and other similarly situated employees to not record all time worked.

99. As a direct and proximate result thereof, Plaintiff and the members of the class described in paragraph 82 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

## **DAMAGES SOUGHT**

100. Plaintiff and the FLSA Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated overtime wage rate.

101. Plaintiff and the FLSA Class Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

102. Plaintiff and FLSA Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Conditionally certify the class described in paragraph 82, and grant Plaintiff's counsel leave to send notice of this lawsuit to the members of the class and allow them the opportunity to opt-in as party plaintiffs pursuant to Section 16 of the FLSA, 29 U.S.C. § 216;

B. Declare and find that the Defendants committed one or more of the following acts:

   i.  Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

   ii. Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

C. Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

D. Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party plaintiffs;

E. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

F. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

19

G. Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

H. Grant such further relief as the Court deems just and equitable.

DATED this 20th day of December 2016

**LAW OFFICE OF JAMES X. BORMES, P.C.**

s/ James X. Bormes
(*pro hac vice* admission pending)
James X. Bormes
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com


Thomas M. Ryan
(*pro hac vice* admission pending)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com


LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff